

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Caption:

Eugene Camon
PO Box 225, Williamstown, NJ 08094
479-268-0894, genecamon@gmail.com
*Full name(s) of Plaintiff(s)*

v.

TEKsystems Inc,. TEKsystems Global Services, LLC
7320 Parkway Drive, Hanover, MD 21076

Jay Alvather - CEO, Keith Bozeman, President, Frederick Berry - Director QA

Fiath Rottman Johnson - VP Human Resources, Erika Hines - HR
*Full name(s) of Defendant(s)*

**COMPLAINT**
**FOR EMPLOYMENT**
**DISCRIMINATION**

CIVIL ACTION
NO. **17   3401**

This action is brought for discrimination in employment pursuant to (check only those that apply):

   x    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to
2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first
obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

\_\_\_\_ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621-634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination
in Employment Act, you must first file a charge with the Equal Employment
Opportunity Commission, and you must have been at least 40 years old at the time
you believe that you were discriminated against.*

\_\_\_\_ Americans with Disability Act of 1990, as codified, 42 U.S.C. §§ 12112-12117.
*NOTE: In order to bring suit in federal district court under the Americans with
Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal
Employment Opportunity Commission.*

\_\_\_\_ Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat. §§ 951-963
(race, color, family status, religious creed, ancestry, handicap or disability, age,
sex, national origin, the use of a guide or support animal because of blindness,
deafness or physical handicap of the user or because the user is a handler or trainer
of support or guide animals).

(Rev. 10/2009)

-1-

*NOTE: In order to bring suit in federal district court under the Pennsylvania Human Relations Act, you must first file a complaint with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations, and then you must wait one year prior to filing a lawsuit.*

**I.   Parties in this complaint:**

A.   List your name, address and telephone number.   Do the same for any additional plaintiffs named.   Attach additional sheets of paper as necessary.

Plaintiff      Name:   Eugene Camon III
               Street Address:   PO Box 225
               County, City:   Glouster County, Williamstown
               State & Zip:   NJ 08094
               *Telephone Number:*   479-268-0894, genecamon@gmail.com

B.   List all defendants' names and the address where each defendant may be served.   Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page.   Attach additional sheets of paper as necessary.

Defendant      Name:   Jay Alvather - CEO, Keith Bozeman, President t, Frederick Berry - Director QA
               Faith Rottman Johnson - VP Human Resources, Erika Hines - HR (see attachment A)
               Street Address:   7320 Parkway Drive
               County, City:   Anne Arundel County, Hanover
               State & Zip:   Maryland, 21076
               Telephone Number:   410-540-3206

C.   The address at which I sought employment or was employed by the defendant(s) is:

               Employer:   TEKsystems Inc,. TEKsystems Global Services, LLC
               Street Address:   7320 Parkway Drive
               County, City:   Anne Arundel County, Hanover
               State & Zip:   Maryland, 20179
               Telephone Number:   410-540-3206

**II.   Statement of the Claim**

A.   The discriminatory conduct of which I complain in this action includes (*check only those that apply to your case*):

_____   Failure to hire me

__X__   Termination of my employment

_____   Failure to promote me

-2-

_____ Failure to reasonably accommodate my disability

_____ Failure to reasonably accommodate my religion

__X__ Failure to stop harassment

_____ Unequal terms and conditions of my employment

__X__ Retaliation

__X__ Other (*specify*): Violated Title VII Prohibition against race prohibition _____

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

B.  It is my best recollection that the alleged discriminatory acts occurred or began on or about: (month)  July ____ , (day) 9 _____ , (year) 2014 ____ .

C.  I believe that the defendant(s) (check one):

_____ is still committing these acts against me.
__X__ is **not** still committing these acts against me.

D.  Defendant(s) discriminated against me based on my (*check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged*):

__x__ race _____          __x__ color _____

_____ religion _____          _____ gender/sex ___x_____

_____ national origin _____

_____ age   My date of birth is _____ (*Give your date of birth only if you are asserting a claim of age discrimination*)

E.  The facts of my case are as follow (*attach additional sheets of paper as necessary*):

I  Eugene Camon III Iexperienced age, race, gender, unlawful harassment, threats of termination and censure, wrongful termination and retaliation in violation of EEOC policies and TEKsystems diversity, inclusion, code of ethics and unlawful harassment policies and training during my employment with TEKsystems from 7/9/14 – 11/21/14. These actions are related to reported activities that occurred while on TEKsystems project assignment to Charter Communications, Englewood Village, Colorado. After reporting the claims of age, race, gender, unlawful harassment, threats of termination and censure to TEKsystems HR 9/30/14 I was removed from the Charter project as QA Practice Architect 10/13/14 and informed that my employment was not in jeopardy and that there would be no retaliation or wrongful termination.

 11/11/14 *I was informed of the HR findings which resulted in mandatory diversity, racial discrimination and harassment training for employees associated with the Charter project.*

 I was wrongfully terminated in retaliation of my complaint 11/21/14 with the excuse of reduction in force.

_____

  See Attachment B for details        See attachment C for Chronoloty        See attachmentD for EEOC Right to SUE        See attachment E for EEOC Determination

_____

_____

-3-

**NOTE:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, or the Philadelphia Commission on Human Relations.*

**III.** **Exhaustion of Administrative Remedies:**

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on: ___November4, 014_____ (*Date*).

B.  The Equal Employment Opportunity Commission (*check one*):

    ____ has not issued a Notice of Right to Sue Letter.
    _x_ issued a Notice of Right to Sue Letter, which I received on _May 11, 2017___ (*Date*).

**NOTE:** *Attach to this complaint a copy of the Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

C.  *Only plaintiffs alleging age discrimination must answer this question.*

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct (*check one*):

    _x_ 60 days or more have passed.
    ____ fewer than 60 days have passed.

D.  It is my best recollection that I filed a charge with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct on: _____ (*Date*).

E.  Since filing my charge of discrimination with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct (*check one*):

    ____ One year or more has passed.
    ____ Less than one year has passed.

## IV.    Relief

**WHEREFORE**, Plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs as well as (*check only those that apply*):

- ____    Direct the defendant to hire the plaintiff.
- ____    Direct the defendant to re-employ the plaintiff.
- ____    Direct the defendant to promote the plaintiff.
- ____    Direct the defendant to reasonably accommodate the plaintiff's disabilities.
- ____    Direct the defendant to reasonably accommodate the plaintiff's religion.
- ____    Direct the defendant to (*specify*):_____
- __x__    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.
- ____    Other (*specify*):_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _____, 20__.

Signature of Plaintiff    _____
Address                            _____
                                        _____
                                        _____
                                        _____
Telephone number           _____
Fax number (*if you have one*)    _____

## Defendants List

**Jay Alvather - CEO**
**TEKSystems Inc., TEKsystems Global Services, LLC**
**7320 Parkway Dr.**
**Hanover, MD 21076**
*410 – 540 – 7700*

**Keith Bozeman - President**
**TEKSystems Inc., TEKsystems Global Services, LLC**
**7320 Parkway Dr.**
**Hanover, MD 21076**
**410 – 540 – 7700**

**Faith Rottman Johnson – VP Human Resources**
**TEKSystems Inc., TEKsystems Global Services, LLC**
**7320 Parkway Dr.**
**Hanover, MD 21076**
**410 – 540 – 7700**

*Frederick Berry – Director of QA Practice*
**TEKSystems Inc., TEKsystems Global Services, LLC**
**7320 Parkway Dr.**
**Hanover, MD 21076**
**410 – 540 – 7700**

**Erika Hines – Human Resources**
**TEKSystems Inc., TEKsystems Global Services, LLC**
**7320 Parkway Dr.**
**Hanover, MD 21076**
**410 – 540 – 7700**

EEOC Form 161-A (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Eugene Camon, III<br>Po Box 225<br>Williamstown, NJ 08094 | From: | Dallas District Office<br>207 S. Houston St.<br>3rd Floor<br>Dallas, TX 75202 |
|---|---|---|---|

☐     On behalf of person(s) aggrieved whose identity is
      CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2015-00384 | Angel M. Padilla,<br>Investigator | (214) 253-2884 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

MAY 1 1 2017

Enclosures(s)

**Belinda F. McCallister,**
**Acting District Director**

*(Date Mailed)*

cc:

TEK SYSTEMS
7437 Race Road
Hanover, MD 21076

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

207 South Houston Street, Third Floor
Dallas, TX 75202
(214) 253-2700
FAX (214) 253-2720

Charge Number: **450-2015-00384**

**Eugene Camon**                                                    **Charging Party**
**1144 Hidden Ridge Drive, Apt 2238**
**Irving, Texas 75016**

**TEKsystems Global Services, LLC**
**Attn: Ericka Hines, Human Resources Manager**          **Respondent**
**7320 Parkway Dr.**
**Hanover, MD 21076**

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to
the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended
("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA").

All requirements for coverage have been met. Charging Party alleges that he was discriminated
against because of his race (African American) and sex (male), subjected to harassment based on
race and sex, under Title VII, and retaliated against when he was discharged for filing a
complaint with the company's human resources department, in violation of Section 704 (a) of Title
VII and Section 4(d) of the ADEA.

Respondent denies that the reason for discharge was due to Charging Party's filing a discrimination
complaint. Respondent contends that the Charging Party's employment as a Practice Architect ended
after Charging Party sought to voluntarily withdraw from his role supporting TEKsystems' client
(Charter), and due to his unwillingness to continue to report to his supervisor.

During the investigation, the parties were afforded the opportunity to submit evidence in support
of their respective positions. The Commission considered all the evidence disclosed during the
investigation and finds that there is reasonable cause to believe that Respondent violated Title
VII's prohibition against race discrimination. The Commission finds that management and HR
officials improperly addressed discriminatory treatment by, and perceptions of, its client by requiring
Charging Party to change his behavior to make him more acceptable, instead of admonishing the
client that its perceptions were based on discriminatory animus under federal civil rights laws.
Charging Party was reasonable in his position that he preferred to not work with this client and with
the management official that maintained the client's account. The evidence shows that Respondent
claims that Charging Party was discharged. There is credible evidence showing that his
termination was characterized, by the HR official who informed him, as a layoff for economic
reasons. The Commission finds that these varying accounts demonstrate pretext,
undercutting asserted legitimate business reasons for his separation from employment. Whether

characterized as a layoff, discharge or constructive discharge, there is reasonable cause to believe that discrimination with regard to his separation from employment occurred.

Evidence of discrimination included testimony that the client to which Charging Party was assigned did not like Charging Party's "swagger." A relevant email states, "not sure how his (Charging Party) style/flare will be received outside of south eastern U.S." These factors, and other evidence, demonstrate matters of "customer preference" with implication of racial animus that should have been addressed with the client, and which ultimately played a role in his separation from employment with Respondent.

As to the allegations of age and sex discrimination, the EEOC issues no finding. The EEOC issues no finding as to the claims of harassment and retaliation under Title VII and the ADEA.

Section 706(b) of Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act of 1967 ("ADEA") requires that if the Commission determines there is reasonable cause to believe that the charge is true, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Having determined there is reasonable cause to believe the charge is true; the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. A representative of this office will be in contact with each party in the near future to begin the conciliation process. Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with Section 706(b) of Title VII and Section 1601.26 of the Commission's Procedural Regulations. If the Respondent declines to enter into settlement discussions, or if the Commission's representative for any other reason is unable to secure a settlement acceptable to the Commission, the Director shall so inform the parties in writing and advise them of the court enforcement procedures available to the Charging Party and the Commission.

On behalf of the Commission;

_2 /15/2017_
Date

Shirley A. Richardson
District Director

2

Eugene Camon - TEKsystems and Charter Communication EEOC Complaint Timeline

The most disappointing aspect of this is that the TEKsystems leadership GDM, DM, and QA Practice Manager were all aware of this and did not ensure that I was not working in an environment that was hostile in nature based on age, gender, and race. They repeatedly encouraged me to engage a client that did accept me as a consultant from the first day. This facilitated a very stressful, hostile, and threatening work environment.

Most if not all of this has been verbal communications. The following persons can provide additional information to substantiate my concerns, participated in the conversation or are aware of the behaviors; Terry Burns (PAT Lead), April Atchinson (AM), Fred Berry, Phani Kolaraja, Sean James, and KIT Diasabeygunawardena.

### July 9, 2014 (Charter Communication, Englewood Village, CO)

- First day of work as TEKsystems Employee travel to Charter Communication Onsite Englewood Village, CO
- Informal introduction to Shawn Arledge and Houshmand Moarefi
- After 6p Frederick Berry (manager) informs me that Houshmand sent email to Phani Kolaraja and Kit stating "Have you seen Gene?" The email was forwarded to Fred

### July 10, 2014 (Charter Communication, Englewood Village, CO)

- Frederick Berry informs me that Houshmand stated "Look out at the floor!" "He does not look like the people on the floor!" We are looking for cultural fit
- Frederick Berry explained that cultural fit was big breasted, blonde, Caucasian females and young white males
- Terry Burn comments about me being a black man with too much swagger and was disturbed of these comments
- Frederick Berry states that I need to walk with more purpose and began to demonstrate how the young white males walked and I should walk something similar
- Black swagger jokes go on all day

### July 11, 2014 (Charter Communication, Englewood Village, CO)

- Ongoing comments about swagger
- Lunch with Houshmand and Shawn Arledge – I am informed that I did not speak loud enough in engaging Houshmand
- Frederick Berry chastises me for not connecting with Houshmand in spite of his comments
- Frederick Berry threatens that if I am not successful with Charter than I might not be a good fit for TEKsystems
- Evening mixer with Houshmand (Charter) Kit TEKsystems, Frederick Berry and other TEKsystems employees
- Frederick Berry asks me if I will be returning or resigning

**July 15, 2014 (Charter Communication, Englewood Village, CO)**

- Frederick Berry informs me that Houshmand comments that he hopes that can speak clearly and can conduct myself in meetings
- Frederick Berry directed me to approach Shawn Arledge (Charter Communications client manager) several times during the day. Shawn was annoyed by me approaching him and informed Fred to tell me to back off

**July 17, 2014 (Charter Communication, Englewood Village, CO)**

- Frederick Berry informs me that Sean James (Senior Delivery manager) stated "What's up my nigger?' in an afterhours mixer in front of numerous TEKsystems Employees
- Frederick Berry Warns me to be careful interacting with Sean James
- Elle Hunt (Frederick Berry's Manager) meets with Houshmand.
- Frederick Berry informs me of meeting comments; "I walk with a slouch do I have a physical ailment" concerns about me being able to connect with the Charter Communications client
- Frederick Berry threatens that my job could be in jeopardy if I cannot turn the client relationship around in 90 days
- Frederick Berry informs me that Houshmand comments that he hopes that can speak clearly and can conduct myself in meetings

**September 11 2014 (Charter Communication, Englewood Village, CO)**

- One on one conversation with April Atchinson and Terry Burns in attendance
- During conversation it was revealed that April had experienced and was privy to conversations where the Charter Communications client had consultant preferences specific to race, gender, and age. Specifically that the client preferred big breasted, blonde, white women. She is African American and was position to be less visible at the client location. She also commented on the "What's up my nigger?" comment by Sean James. She also informed me that Sean James admitted that this incident occurred
- She reported her experiences to HR months prior to my arrival
- She recorded notes in a journal and asked and stated that she would have to report this to HR and I gave her my permission.

**September 12 2014 (Charter Communication, Englewood Village, CO)**

- April informs me that she reported my concerns to her manager. He instructed her not to get involved and not to report these concerns to HR
- Subsequently April reported concerns to Eric Hines in HR. She did not receive a response from HR until the day after I officially communicate my concerns
- She recorded notes in a journal and asked and stated that she would have to report this to HR and I gave her my permission.

<u>September 30, 2014 (Charter Communication, Englewood Village, CO)</u>

i contacted Erica Hines and Jennifer Benton HR to file a formal complaint (see quoted email below)

*"In reference to my complaint and our discussion I want to provide you a snapshot of my concerns and the issues that I have faced since my first day on the job which continue today.  I will have to send two separate emails.  Once specific to the client environment and another specific to the inappropriate behaviors of my supervisor.*

<u>*Charter Communications - Cultural Fit*</u>
*On my first day of employment and first day at Charter Communications there was an email sent to the Phani and KIT and forwarded to my manager Fred Berry from the client buyer*
*Houshmand (form TEKsystems employee.)  The email stated* **"Have you seen Gene?"** *It was communicated to me by my supervisor Fred Berry that the client communicated that I was* **"not a cultural fit base"** *on an impromptu introduction.  It has been communicated to me several times that cultural fit would be key to being successful in this investigation.*

*He also detailed that the client stated that* **"I did not look like"** *the people in the primary working area.  Further he went on to tell me the following;* **the client preferred young white females with large breasts or young white males."**

*He also explain that* **I did not walk like the other white males on the floor and began to demonstrate how they walk and explained that I needed to walk with a more since of purpose and with less swagger.  The client also communicated that they hope that I speak correctly in meetings.**

*Fred Berry also communicated to me that after a client meeting with Elle Hunt that it was stated that I walked with a slouch and asked if I had a physical problem. I explained that I am 6' 4" and 225lbs and often lean forward to communicate with people so that I do not appear imposing.*

*The most disappointing aspect of this is that the* **TEKsystems leadership GDM, DM, and QA Practice Manager were all aware of this and did not ensure that I was not working in an environment that was hostile in nature based on age, gender, and race.**

*Issues and concerns relative to this environment were also communicated to leadership by other team members and no actions have been taken to address or correct the client behaviors or the project leadership's ability to address and rectify.*

*Most if not all of this has been verbal communications.  The following persons can provide additional information to substantiate my concerns. Terry Burns (PAT Lead), April Atchinson (AM), Fred Berry, Phani Kolaraja, "*


<u>October 1, 2014 – Englewood Village, CO</u>
One on one conversation with Jennifer Benton, Director of HR, to formally communicate my concerns and file an official HR Complaint

<u>October 2, 2014 – Englewood Village, CO</u>
April Atchison contacts EEOC and file a complaint

2. Witness to the behaviors of TEKsystems and Charter Communications:
- Terry Burns (TEKsystems Consultant was a participant and privy to many of these conversations and behaviors during my first week of employment and the following weeks. He was also verbally communicated the "What's up my nigger?" comment by Sean James (TEKsystems Sr. Manager)

3. Witness to "What's up my Nigger?" comment by Sean James
- April Atchison is privy to conversations with TEKsystems delivery team concerning client preferences of consultants based on race, gender and age as well as the "What's up my nigger?" comment by Sean James. She reported these discriminatory behaviors to HR months prior to my arrival. Sean James admitted to her that he had made this comments. Terry Burns was also made aware of this occurance. Phani Kolaraja, and Frederick Berry were in attendance when this occurred.

**October 3 2014 – Irving, TX**
Conference call meeting with Frederick Berry (manager) and Elle Hunt (Frederick Berry's Manager). I was informed that I was being removed from the Charter Communications project. Below is an email recap of the meeting.

*"Elle,*

*per our conversation I am in agreement to the following changes that are effective immediately.*
*Please let me know if I missed any details.*

<u>*Charter Communications:*</u>
*- No Longer a member of the Charter Communications Project Team*
*- All intellectual property and created documents will be uploaded to the practice site*
*- No further communications formal or informal with the Charter Communications project team or Charter*
*Communications*

<u>*Reporting:*</u>
*- Still reporting to Fred officially*
*- All work assignment will be coordinated and communicated by Elle*
*- All status reporting will be sent to Elle*
*- Elle to establish weekly meeting to discuss and assigned tasks*
*- No work assignment and delegations from Fred*

<u>*Job Status:*</u>
*- Job and career status not in jeopardy due to these changes*
*- Elle will work to restructure and re-purpose my role and responsibilities"*

**October 6 to Current**
Working from home under direct supervision of Elle Hunt. I have been informed that there are no assignments currently available because Frederick Berry is manager of current client needs. There are several job postings online that I am qualified to work

**October 14 9:30am**
HR follow-up with Erica Hines
1. Erica is going to Denver today to conduct investigation of both April and my statements.
2. Clarity for the what's up my nigger comment
3. Clarity for the behavior of Charter vs. TEKsystems
4. Clarity of Fred Berry's behaviors
5. Walk through the events of the first week on the job

**Additional Notes:**
1. Weekly phone one on ones with Frederick Berry
During these weekly one on ones my manager Frederick Berry would repeatedly say As a Senior leader and at your level of experience you should be taking the opportunity to connect with Shawn informally or formally in actual discussion to mutually understand your level of participation. He also stated that TEKsystems was paying me $150K a year and were not getting what they were paying for.

To:
Who it May Concern

From:
Eugene Camon III
PO Box 225
Williamstown, NJ 08094
*479-268-0894*
genecamon@gmail.com

**EEOC has completed its investigation of  my EEOC Charge# 450-2015-00384 and issued a "Right to Sue Letter" dated 05/11/17.**

RE:  EEOC Complaint against Employer TEKsystems, 7437 Race Road, Hanover, MD 21076, and TEKsystems  Global Services, LLC., Hanover, MD 21076.

<u>Former Employee Contacts:</u>
Faith Rottman Johnson VP Human Resources 410-540-7484, Jennifer Benton Director of Human Resources (jbenton@teksystems), Frederick Berry, fberry@TEKsystems.com QA Practice Manager 609-477-0164, Charles Hall, Executive Director, TEKsystems, Elle Hunt, QA and Practice Testing Director ehunt@TEKsystems.com 239-227-4498,  and Kieth Bozeman, President (kbozeman@teksystems.com).


<u>Complaint</u>
**"I experienced age, race, gender, unlawful harassment, threats of termination and censure, wrongful termination and retaliation in violation of EEOC policies and TEKsystems diversity, inclusion, code of ethics and unlawful harassment policies and training during my employment with TEKsystems from 7/9/14 – 11/21/14. These actions are related to reported activities that occurred while on TEKsystems project assignment to Charter Communications, Englewood Village, Colorado.**

**After reporting the claims of age, race, gender, unlawful harassment, threats of termination and censure to TEKsystems HR 9/30/14 I was removed from the Charter project as QA Practice Architect 10/13/14 and informed that my employment was not in jeopardy and that there would be no retaliation or wrongful termination.**

**11/11/14 I was informed of the HR findings which resulted in mandatory diversity, racial discrimination and harassment training for employees associated with the Charter project.**

**I was wrongfully terminated in retaliation of my complaint 11/21/14 with the excuse of reduction in force.  At the time of wrongful termination TEKsystems had several open QA Architect positions including my position on the corporate website**."


**With 2 weeks of termination my position to support Charter Communications in Dallas was filled by Sherry Mazzetti (text 12/28/14)**

The location of these events was **my assignment to Charter Communications located at 6399 S**

**Fiddlers Green Circle, Greenwood Village, CO and the TEKsystems Denver office located at 6300 South Syracuse Way, Suite 200, Englewood CO, 80111.This occurred from my first day of employment July 9, 2014 until my removal from the project October 3, 2014.**

Discriminatory Practices

1.  On my first day of employment 7/9/2014, there was an email distributed by the client buyer Houshmand Moarefi (VP Charter Communications) stating "Have you seen Gene?"  This email was submitted to Phani Kolaraja (TEKsystems Delivery Manager), Kithsiri Diasabeygunawardena (TEKsystems Business Development Manager), and forwarded to my supervisor Frederick Berry (TEKsystems QA and Testing Director).  My manager contacted me that evening and informed me of the email.  I was informed by my TEKsystems supervisor Frederick Berry  7/10/2014 at the client site that the client, Houshmand Moarefi,  informed him I was not a Charter Communications cultural fit because of my race, gender, and age. It was stated that the client stated he preferred young white blonde females with large breast or young white males graduating college. I am a black male, aged 52, 6' 4", and 225lbs.  He also stated that the client stated I did not look like any of the Charter FTE's on the main working floor.

2.  On 7/10/2014 my manager Frederick Berry informed me in front of Terry Burns, UAT Manager TEK Systems, that I had too much swagger and demonstrated how I should walk like white males on my tip toes.  He also demonstrated other stereotypical behaviors that would have to change.  I was the brunt of jokes and racial stereotypes for weeks from my supervisor and the UAT Manager.

3.  On July 17 Houshmand, the client, that I walked with a slouch to Elle Hunt.  Fred Berry in turn communicated this to me and questioned whether I had a disability. I was then instructed by Fred Berry on how to walk with better posture and more sense of purpose. I am a 10% disabled USAF veteran.

4.  My TEKsystems supervisor and the Colorado delivery team threatened possible censure and termination if I did not thrive in the Charter Communication environment and establish a bond with both Houshmand Moarefi and Shawn Arledge.  My manger on weekly one on conversations threatened my future with TEKsystems based on being accepted by Charter Communications.

5. My supervisor communicated that my future bonus and compensation to my ability to thrive and build
a strong consulting relationship with Charter Communications resulting in growth and sales generation in spite of a hostile, non-diverse, and threatening environment.

6.  My supervisor Fred Berry communicated that the Global Delivery Manager, Sean James stated "What's up my nigger!" at a company sponsored event in front of other employees. This incident was also confirmed by April Atchinson.  This incident was never referred to TEKsystems Human Resources for resolution.  It was a topic of conversation several times by other team members.

7. Houshmand is a former TEKsystems Global Delivery Manager that now works as a VP of Charter Communications and friends with Kithsiri Diasabeygunawardena Business Development.  On 7/16/2014 at a after work mixer he and I discussed the email "Have you seen Gene?" and he began to coach me on the importance on being successful at Charter and how to gain Houshmand's confidence in spite of the discriminatory behavior.

8.  I have provided a timeline of other conversations and activities from my first day of employment

Eugene Camon Compensatory Damage Due to FTE Termination from TEKsystems Inc., TEKsystems Global Services LLC.
PO Box 225, Williamstown, NJ 08094
genecamon@gmail.com
479-268-0894

**Compensatory Damages Table**

| Category | Amount |
|---|---|
| Emotional Distress - Mental Anguish | $50,000 |
| Relocation Expenses | $15,831 |
| Back Pay | $119.000 |
| Financial Losses | $41,200 |
| Total | $226,013 |

**Emotional distress, mental anguish, inconvenience and problems caused by discrimination**
Termination by TEKsystems Global Services Group has resulted in many stress related and medical conditions.  This is due to loss of income, resulting in the following:

**1. Medical Related**
Disable Veterans diagnosed with high blood pressure, type 2 diabetes, GERD, and atopic dermatitis.  During unemployment I was unable to make it to several appointments and to maintain my health.  This resulted in both out of control diabetes and high blood pressure.

**2. Emotional Distress**
a. Termination resulted in denial of unemployment compensation by the state of Texas due to short residency.  Had to apply to FL for unemployment compensation which resulted in a 4 week delay and a weekly payment of $245.00 and only lasted 10 weeks.  After that expiration I was still unable to apply for unemployment in TX.  This resulted in securing a personal loan, applying for and receiving public assistance (food and housing), and asking friends and family for monetary assistance.
b. Employment relocation resulting in staying with relatives in Williamstown, NJ.  Unable to secure short term lease.  Job was located in Manhattan, NY resulting in a 3 hour to and from train commute daily.
c. I experienced stress related depression that exacerbated my health conditions.
d. When filing for unemployment in TX after the completion of the first job assignment (could only file in TX due to residency limitation), it was discovered that TEKsystems Global Services had changed my state for reporting unemployment from TX to FL even though my pay statements reflect TX.  This has resulted in another delay in receiving unemployment compensation.
e. The gap in my employment history results in reliving and having to explain the issues related to my termination with future employers.  I am unable to use them as a reference.

**Job Moving/Relocation Expenses**
As a condition of employment I was asked to relocate from Tampa FL to Dallas TX.  The company provide $10,000 to be used to conduct a "self-move".  The below table details related expenses.

| Moving/Relocation Expenses | Costs |
|---|---|
| Dallas Monthly Storage - $428.00 x 10 months | $4280.00 |
| Moving of Furniture and Household Goods | $10,000.00 |
| Relocation Expense Travel Mileage  (1500 miles X 23.5 cents per mile) | $360.00 |
| Relocation Hotel Costs | $250.00 |
| Relocation Fuel Costs | $173.00 |
| Towing of vehicle | $750.00 |
| Totals | $15,831 |

**Back Pay**

Back pay considerations are based on the details as outlined in the original offer letter as indicated with a start date of 7/19/2015 and a termination date of 11/22/2015. $130K annual salary and $62.50 hourly.   Payroll cadence was weekly.  Since termination I have been able to secure one short term contract opportunity and not been able to secure full time employment.

*"We look to begin your employment with TGS, on or about July 9th, 2014. Your annual compensation will be $130,000 and you will be eligible for a maximum annual bonus potential up to $15,000. The maximum bonus potential will be prorated for 2014 based upon your start date. In 2014, vacation and personal/sick days will be prorated and accrued based on your date of hire. Beginning in 2015, you will be eligible to accrue up to fifteen (15) days of vacation, six (6) personal/sick days and two (2) celebration days per year."*

| | Back Wages 11/28/15 - 4/24/15 | Bonus | Vacation Days | Personal/Sick Days | Celebration Days | Total Compensation and Benefit Loss to Date |
|---|---|---|---|---|---|---|
| Pay Comments | 1. *Started Contract job in Manhattan, NY 4/24 - 8/17/15 Weekly Payroll $2500.00 X 22 weeks -*  2. *Unemployed from 8/14/15 – Current $2500 x 15*  3. *Unable to secure full time employment* | *You will be eligible for a maximum annual bonus potential up to $15,000* | *Beginning in 2015, you will be eligible to accrue up to fifteen (15) days of vacation, six (6) personal/sick days and two (2) celebration days per year."* | | | |
| Back Pay 1 | $55,000 | $15,000.00 | $7,500 | $3,000 | $1,000 | $81,500 |
| Back Pay 2 | $37,500 | | | | | $37,500 |
| **Total** | | | | | | **$119,00** |

**Financial Losses**

Prior to FTE termination I had a credit score of 720.  It is now 540.   I was unemployed for 6 months before my first rework assignment and incurred financial losses.  Below are a list of the financial losses.

| Financial Losses Due to Termination | |
|---|---|
| Financial Obligation | Amount Owed or Arrearage |
| Closed Arvest Bank Checking Account | $1,100.00 |
| Closed Wells Fargo Banking Account | $1,000.00 |
| Closed One America Financial Loan | $5,000.00 |
| Repossession (2007 Mercedes Benz S550) | $32,000.00 |
| Car arrearage (2010 Infinity QX56) | $2,100.00 |
| **Totals** | **$41,200** |

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
PO BOX 149346
AUSTIN TX 78714-9346

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   June  9, 2017

EUGENE CAMON
PO BOX 225
WILLIAMSTOWN NJ 08094-0225

Social Security Number: XXX-XX-3494
Employer: CONNEXUS HUB INC
As:
Employer Account No:  15-555450-9
All dates are shown in
month-day-year order.

### Decision

**Issue**: Separation From Work
**Decision**: We can pay you benefits, if you meet all other weekly requirements such as being able, available and actively searching for work.
**Reason for Decision**: Our investigation found your employer fired you because you were unable to perform your assigned work to their satisfaction.  This is not considered misconduct connected with the work.
**Law Reference**: Section 207.044 of the Texas Unemployment Compensation Act.

#### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions.
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits.  TWC will notify you of any appeal hearing.  If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal.  Submit your appeal online, by fax, or by mailing on or before**
**06-23-17**  .  TWC will use the postmark date or the date we receive the fax or online form to determine whether your appeal is timely.  If you appeal by fax, you should keep your fax confirmation as proof of transmission.  Please include a copy of this notice with appeals correspondence.  **You must appeal each determination separately.**

Mail the appeal to:

| | |
|---|---|
| You may appeal by submitting TWC's online appeal form. Go to www.texasworkforce.org | Appeal Tribunal<br>Texas Workforce Commission<br>*101 E. 15th Street*<br>Austin, TX 78778-0002<br>Or fax to (512) 475-1135 |

Case No.:    7
Claim ID.:   11-06-16
Claim Date:   05-28-17
HEARING IMPAIRED CLIENTS
CALL 711 for RELAY TEXAS

**Please See Reverse For How To File An Appeal.**

BD300E 06/27/2013

# Payment Summary List

## Claimant Information

**Name:**
EUGENE CAMON

**Social Security Number (SSN):**
XXX-XX-3494

## Claim Information

Claim Type:
Regular Unemployment Benefits

Claim Start Date:
Nov 06, 2016

Weekly Benefit Amount:
$493.00

Maximum Possible Benefits:
$12,818.00

Benefits Paid to Date:
$9,367.00

Benefits Remaining:
$3,451.00

Next Date to Request
Payment:
During the week beginning Aug 06, 2017.

## Payment Summary

| Week(s) | TWC Processed Date | Deduction(s) | Payment |
|---|---|---|---|
| Jul 16, 2017 to Jul 22, 2017 | Jul 24, 2017 | $0.00 | $493.00 |
| Jul 09, 2017 to Jul 15, 2017 | Jul 24, 2017 | $0.00 | $493.00 |
| Jul 02, 2017 to Jul 08, 2017 | Jul 10, 2017 | $0.00 | $493.00 |
| Jun 25, 2017 to Jul 01, 2017 | Jul 10, 2017 | $0.00 | $493.00 |
| Jun 18, 2017 to Jun 24, 2017 | Jun 26, 2017 | $0.00 | $493.00 |
| Jun 11, 2017 to Jun 17, 2017 | Jun 26, 2017 | $0.00 | $493.00 |
| Jun 04, 2017 to Jun 10, 2017 | Jun 12, 2017 | $0.00 | $493.00 |
| May 28, 2017 to Jun 03, 2017 | Jun 12, 2017 | $0.00 | $493.00 |
| Feb 05, 2017 to Feb 11, 2017 | Feb 13, 2017 | $493.00 | $0.00 |
| Jan 29, 2017 to Feb 04, 2017 | Feb 13, 2017 | $493.00 | $0.00 |
| Jan 22, 2017 to Jan 28, 2017 | Jan 30, 2017 | $0.00 | $493.00 |
| Jan 15, 2017 to Jan 21, 2017 | Jan 30, 2017 | $0.00 | $493.00 |
| Jan 08, 2017 to Jan 14, 2017 | Jan 17, 2017 | $0.00 | $493.00 |
| Jan 01, 2017 to Jan 07, 2017 | Jan 17, 2017 | $0.00 | $493.00 |

| Week(s) | TWC Processed Date | Deduction(s) | Payment |
|---|---|---|---|
| Dec 25, 2016 to Dec 31, 2016 | Jan 03, 2017 | $0.00 | $493.00 |
| Dec 18, 2016 to Dec 24, 2016 | Jan 03, 2017 | $0.00 | $493.00 |
| Dec 11, 2016 to Dec 17, 2016 | Dec 19, 2016 | $0.00 | $493.00 |
| Dec 04, 2016 to Dec 10, 2016 | Dec 19, 2016 | $0.00 | $493.00 |
| Nov 27, 2016 to Dec 03, 2016 | Dec 15, 2016 | $0.00 | $493.00 |
| Nov 20, 2016 to Nov 26, 2016 | Dec 15, 2016 | $0.00 | $493.00 |
| Nov 13, 2016 to Nov 19, 2016 | Nov 28, 2016 | $0.00 | $493.00 |
| Nov 06, 2016 to Nov 12, 2016 | Nov 21, 2016 | $0.00 | $0.00 |